IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Criminal No. 3:12CR _18_ |
| MICHAEL DUANE GRIFFIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STATEMENT OF FACTS

The United States and the defendant agree that the factual allegations contained in this Statement of Facts and in Count One of the Information filed in this case are true and correct, and had the case gone to trial, the United States would have proven each of the factual allegations beyond a reasonable doubt:

1.  From on or about March 15, 2010, through on or about September 30, 2011, within the Eastern District of Virginia and elsewhere, defendant

**MICHAEL DUANE GRIFFIN**

did knowingly, willfully, and unlawfully execute and attempt to execute a scheme and artifice to defraud and to obtain by false and fraudulent pretenses, representations, and promises, money under the custody and control of Medicaid, a health care benefit program as defined by Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

1

## BACKGROUND

2. The Medicaid program was established by Title 19, Social Security Act of 1965, to provide medical assistance to indigent persons. The United States Department of Health and Human Services (HHS) and the Commonwealth of Virginia, Department of Medical Assistance Services (DMAS), administer and supervise the administration of the Medicaid program in Virginia, which is called the Virginia Medical Assistance Program (Medicaid). The United States contributes approximately fifty percent of the cost to the Medicaid program.

3. Medicaid is a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

4. Intensive In-Home Therapy (IIH) services are among the many programs offered by Medicaid in Virginia. IIH services are designed to assist those youth and adolescents that are at risk of being removed from their homes, or are being returned to their homes after removal, because of a significant mental health, behavioral, or emotional issue.

5. Medicaid requires its IIH providers to supply qualified counselors that are required to go into an at-risk child's home and provide a counseling service that specifically addresses that child's mental health issues. These counselors are referred to as "Qualified Mental Health Professionals" (QMHP). Further, Medicaid requires that IIH providers contract with a licensed mental health professional (LMHP). This licensed individual reviews and approves clinical assessments of the at-risk child. Medicaid regulations require that a LMHP be a specific properly licensed professional, to include licensed professional counselors.

6. Medicaid reimburses IIH providers for services provided based on several factors, including, primarily, whether the services provided are medically necessary for the recipient. IIH services are reimbursable only when medically necessary and only for patients who suffer from mental, behavioral, or emotional illness resulting in significant impairments in major life activities.

7. Under Medicaid rules, in order to qualify for IIH services, a prospective recipient must be evaluated by an LMHP or a QMHP. This evaluation and assessment must indicate: the specifics of how the child meets the service eligibility criteria; that the child is at risk of removal from the home based upon their behavioral health issues; and that service needs can best be met through IIH services.

8. Medicaid requires prior-authorization of IIH services. Keystone Peer Review Organization, Inc. ("KePro") is contracted by Medicaid to implement and maintain a "prior authorization program" for Medicaid fee-for-service enrollees. The purpose of prior authorization is to validate that the service requested is medically necessary and meets Medicaid criteria for reimbursement. IIH providers submit detailed documentation to KePro that explains why each recipient is in need of IIH services based on the following criteria:

   a. Whether the recipient has difficulty in establishing or maintaining normal interpersonal relationships to such a degree that they are at risk of hospitalization or out-of-home placement because of conflicts with family or community.

   b. Whether the recipient exhibits such inappropriate behavior that repeated interventions by the mental health, social services, or judicial system are necessary.

c.  Whether the recipient exhibits difficulty in cognitive ability such that they are unable to recognize personal danger or recognize significantly inappropriate social behavior.

9. From on or about March 15, 2010, through on or about December 14, 2011, First Class Living Center, LLC ("First Class"), was an IIH provider located in the Eastern District of Virginia. First Class was licensed through the Commonwealth of Virginia and under contract with Medicaid to provide IIH services.

10. Defendant MICHAEL DUANE GRIFFIN was the "Intensive In-Home Program Director" for First Class. As program director for First Class, GRIFFIN submitted prior authorization documentation to KePro to initiate IIH services for Medicaid recipients.

11. Medicaid, through KePro, relied upon the prior-authorization paperwork GRIFFIN prepared and submitted that requested approval to bill for IIH services. First Class was authorized to bill and receive payment from Medicaid for IIH services once KePro authorized service to begin.

## The Scheme and Artifice to Defraud Medicaid

12. It was the object of the scheme and artifice that GRIFFIN and First Class would receive reimbursement from Medicaid to which they were not entitled through the submission of false and fraudulent claims for medically unnecessary IIH services.

## Acts in Execution of the Scheme and Artifice

13. On or about February 4, 2011, GRIFFIN made the following false statements on prior authorization request documents regarding the medical necessity of IIH services for Medicaid recipient L.C.:

a.  L.C. has had recent run-ins with the law for petty larceny, trespassing, and curfew violations (2 in the last 30 days);

b.  L.C. previously was placed on probation for one year for vandalism;

c.  L.C. was involved in 3 fights in the last 30 days that have resulted in 2 injuries. L.C. has threatened to fight 3 teachers at his school this year (2 males and 1 female).

Based upon these false statements and others, KePro authorized First Class to provide IIH services for L.C. Between February 6, 2011, and November 5, 2011, First Class billed and received $23,400.00 for IIH services provided to L.C. that were not medically necessary.

14. On or about September 12, 2010, GRIFFIN made the following false statements on prior authorization request documents regarding the medical necessity of IIH services for Medicaid recipient D.J.C.:

a.  D.J.C. has set fire and destroyed public property while in his neighborhood and his actions have brought about interventions from the city's housing authority and local police department;

b.  D.J.C. was involved in several fights last school year (total of 11 fights) and missed 14 days from school due to suspensions. D.J.C. attempted to fight his school's physical education teacher because he believed the adult male was being unfair to him during gym class.

Based upon these false statements and others, KePro authorized First Class to provide IIH services for D.J.C. Between September 12, 2010, and May 28, 2011, First Class billed and received $21,600.00 for IIH services provided to D.J.C. that were not medically necessary.

15. Based upon GRIFFIN's false statements on prior authorization documents, First Class billed Medicaid at least $325,980.00 for medically unnecessary IIH services.

16. GRIFFIN personally earned $106,974.79 from First Class in his role as Intensive In-Home Program Director.

17. The defendant committed the offenses herein knowingly, voluntarily, without mistake or accident.

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____
Jessica Aber Brumberg
Assistant United States Attorney

Joseph E. H. Atkinson
Special Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, MICHAEL DUANE GRIFFIN, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Michael Duane Griffin
Defendant

I am MICHAEL DUANE GRIFFIN's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

                                       _____
                                       Ernest P. Gates, Jr., Esq.
                                       Attorney for Michael Duane Griffin